## Humble Bros. Lumber Company et al. v. Robertson.

(Decided June 7, 1929.)

O. B. BERTRAM for appellants.

ROBT. ANTLE and W. J. CHUMBLEY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On April 8, 1927, the appellants, Humble Bros. Lumber Company, a partnership, and I. L. Hopper, together entered into a contract with the appellee, M. O. Robertson, by the terms of which the appellee sold to the appellants a large quantity of square heading which he was to saw out of a certain tract of timber situated near

Jamestown, Ky., and more specifically identified in the contract. The prices to be paid for this heading varied according to its dimensions and quality as delivered. That heading, known as "wine heading," of 18 inches in length and 9 inches in average width, commanded the best price, it being $65 per thousand. The same size heading, but of second quality called "oil heading," was priced at $25 per thousand. The prices for each quality diminished as the dimensions of the delivered heading diminished from the sizes provided for the highest price heading. The contract made no provision for any especial sort of an inspection to determine grade or quality. It did provide for an inspection at Greasy Creek, but the parties by their conduct waived this provision, and in fact the inspection was had at Burnside, Ky.

Under this contract the appellee cut a quantity of heading, and it was hauled from the sawmill to the banks of the Cumberland river and thence taken by barge to Burnside. This heading was barged to Burnside in four different loads. The appellee accompanied the first barge load. Before the heading on this load was inspected, appellee went back to where the rest of his heading was stacked on the banks of the Cumberland. There is a dispute in the evidence whether he agreed before setting out on this return trip that the load of heading which had just been delivered should be inspected and shipped out to the Louisville Cooperage Company, which had bought it from the appellants, or whether it was to be left stacked in the yards at Burnside until he got back to that place. At all events, Mr. Joshlin, the inspector of the Louisville Cooperage Company, did inspect the heading in the absence of the appellee, and it was shipped out to the cooperage company before his return. It is not clear whether the appellee accompanied the second barge load of heading to Burnside or not, but it is clear that this second load was also inspected in his absence by Mr. Joshlin and shipped out to the cooperage company. It is agreed that the appellee accompanied the third barge load of heading to Burnside, and it is also agreed that when he learned the results of the inspection of the first two barge loads he was very much dissatisfied. There is a dispute in the evidence whether he acquiesced in the inspection of the third and fourth barge loads as made by Mr. Joshlin or not, the appellants claiming that he did, and the appellee asserting that he did not. After the fourth barge load had been delivered to the appellants and they had ac-

cepted all the heading delivered to them and had resold it and shipped it to the cooperage company, they paid the appellee for the heading the contract price based on the grade and quality of the heading as determined by Mr. Joshlin when he inspected it. Dissatisfied with this, appellee brought this suit, in which he averred in substance that all the heading which he had delivered had not been paid for, that the heading which appellants had paid for had not been correctly graded, and that, had it been and all the heading delivered paid for according to its quality, there would have been due him from the appellants in accordance with the prices fixed in the contract the sum of $1,200 in addition to that paid him by the appellants. He also averred that the grading done by Mr. Joshlin was the result of a conspiracy entered into between him and the appellants to cheat and defraud him. Appellee further claimed in his petition that the appellants had agreed to pay him a bonus of $5 per thousand on account of the excellent quality of his heading, and that they had failed to do this, by reason of which he was damaged in the additional sum of $450. It may be said in passing that no mention of any bonus was made in the written contract. By answer the appellants denied that the grading was in any wise other than it should have been, denied that it had failed to pay for any heading delivered to it, denied the alleged conspiracy, set out in detail the character and quality of the heading delivered to them according to the inspection of Mr. Joshlin, and then averred that they had paid appellee for this heading in accordance with the contract prices. In fact, appellants claimed that they had overpaid appellee because of certain advances made him prior to the delivery of the heading. For this overpayment they asked judgment by way of counterclaim. The affirmative matters in the answer were in turn denied by the appellee. On a trial before a jury the appellee was awarded a verdict of $600 and the appellants' counterclaim was dismissed. From the judgment entered on that verdict this appeal is prosecuted.

Appellants first contend that they were entitled to a peremptory instruction because appellee failed to prove any conspiracy between them and Mr. Joshlin or any fraud in the inspection and grading of the heading. Appellants are correct in their contention that the appellee failed to prove any such conspiracy or fraud as he alleged in his petition. But his claim of conspiracy and

fraud in the inspection and grading was so much surplusage. The appellants were bound by the contract to pay for the heading the prices therein provided according to its quality and grade, and it makes no difference for what reason appellants misgraded the heading, whether through innocent mistake or fraud or conspiracy. If they did so, they were responsible to the appellee for the contract price of the heading according to its actual grade and quality. Compare Crescent Stave Co. v. Brown, 181 Ky. 787, 205 S. W. 937. The evidence was in conflict concerning the questions of the quantity, grade, and quality of this heading and of appellee's acquiescence in and consent to the grading and inspection which Mr. Joshlin made. Both issues were therefore properly submitted to the jury under instructions not complained of, except in one particular which we shall presently notice.

No complaint is made of the size of the verdict if appellee is entitled to recover at all.

Appellants next complain of the court permitting the appellee to testify about the bonus he says he was promised for the excellent quality of this heading. It may be that this evidence was admissible, not to establish any foundation for any claim for the bonus, but as tending to establish an admission on the part of the appellants that the heading was of a higher grade and quality than they said it was on the trial of this suit. But without deciding that question, we find that the trial court by its instructions eliminated from the jury's consideration any question of the appellee being entitled to any bonus and limited the appellee's damages, if he was entitled to any, to the difference between the value of the heading as graded and the value of the heading if it had been properly graded not to exceed the amount of $1,200, the amount claimed in the petition on this score. The appellants therefore were not prejudiced by the admission of this testimony about the bonus.

Complaint is made of the instructions, but this is on the theory of the appellants that the appellee failed to prove the conspiracy and fraud alleged in his petition. This, we have seen, it was not necessary for him to do, and hence the complaint of the instructions is without merit.

Finding no error prejudicial to appellants' substantial rights, the judgment is affirmed.